## Case No. 8,475.

### LONERGAN v. FENLON.

[2 Pittsb. Rep. 115; 7 Pittsb. Leg. J. 266.]

Circuit Court, W. D. Pennsylvania. Feb. 22, 1866.

EQUITY—EVIDENCE— EFFECT OF RESPONSIVE ANSWER — ACT OF 1841 — INSOLVENCY AND BANKRUPTCY DISTINGUISHED — COLLATERAL PROCEEDINGS AS TO VALIDITY OF JUDGMENT — SETTING ASIDE JUDICIAL SALE.

1. When the answer to a bill in equity is fully responsive, the answer will prevail, unless it is overcome by the testimony of two witnesses to the substantial facts, or at least by one witness, and other attendant circumstances which supply the want of another witness.

2. Contemplation of insolvency is not a "contemplation of bankruptcy," within the meaning of the act of congress of 1841 (5 Stat. 440).

3. A judgment creditor must have notice of a prior act of bankruptcy, or of the intention of the bankrupt to take the benefit of the act, before his judgment can be assailed.

4. The validity of the judgment cannot be called in question in a collateral proceeding.

5. After the lapse of sixteen years from the date of the judicial sale under the judgment, a chancellor will not decree that it shall be set aside, at the instance of the vendee of the assignee in bankruptcy.

[This was a bill in equity by Grace Lonergan against James Fenlon to enjoin defendant from disposing of certain property claimed by plaintiff.]

C. W. Robb and Mr. Shaler, for complainant.

Geo. P. Hamilton, for respondent.

McCANDLESS, District Judge. This case comes before us upon bill, answer, and testimony. The bill charges, substantially, that Kennedy Lonergan was the owner of thirty lots of ground in the seventh ward of the city of Pittsburgh, purchased from Mrs. Sarah B. Fetterman, the whole consideration money of which was not fully paid. That, being an extensive railroad contractor, he became largely involved, owing to the inability of the Hiawatha Tennessee Railroad Company and the Little Miami Railroad Company to meet their liabilities to him. That on the 24th of March, 1842, he executed a judgment bond to John McDivitt for $3,000, and another to the respondent for $5,000, and that these were executed in contemplation of bankruptcy. That Fenlon advised him to take the benefit of the bankrupt law, and that to the prejudice of the general creditors. Fenlon, on 10th July, 1842, caused these bonds to be enacted to operate as liens upon the real estate so purchased. That the judgment to Fenlon was without consideration, and in fraud of the rights of creditors. That he caused these lots to be sold by the sheriff, and purchased the same for $2,010, when they cost Lonergan $7,250, and are now worth $20,000. That on the 20th of December, 1842, upwards of five months after the judicial sale, Lonergan filed his application in the district court of the United States for the district of Ohio, and was declared a bankrupt, and on the 4th day of February, 1843, he was discharged, and received his certificate as a bankrupt. On the 16th of December, 1852, nearly ten years afterwards, the assignee in bankruptcy, at public sale, and under an order of the proper court, sold these lots to the complainant for the sum of seventy-two dollars. The sale was approved, and a deed made to the vendee, the widow of Kennedy Lonergan. The bill does not charge, but it appears in the evidence, that Lonergan died in 1851. The complainant alleges that she is the owner of the lots in question, that she

has no adequate remedy at law, prays the court to decree the same to her, and that the respondent may be perpetually enjoined from disposing of the same.

To every material part of this bill the answer is fully responsive, and in such case the rule in equity is "that unless it is overcome by the testimony of two witnesses to the substantial facts, or at least by one witness, and other attending circumstances which supply the want of another witness, and thus destroy the statement of the answer, or demonstrate its incredibility or insufficiency as evidence, the answer must prevail," [Otis v. Watkins] 9 Cranch [13 U. S.] 343; 3 Greenl. 296.

Guided by this rule, let us examine the complainant's proofs. It is contended that the judgment to Fenlon was without consideration, and that he was particeps criminis in procuring its confession, to the prejudice of the general creditors of the bankrupt estate. The exhibits attached to the answer show that he was a meritorious creditor, and, from the testimony of McDivitt, it is clear that in everything connected with the execution of the bond, and its entry as a lien, Fenlon was comparatively passive. It was held by McDivitt for nearly four months, and then only entered upon advice from Lonergan that he could not get through with his difficulties. The second breach of this point made by complainant's counsel brings up the main question in this case. Was the judgment to Fenlon confessed in contemplation of bankruptcy, and at that date, had Fenlon notice of the intention of the bankrupt to take the benefit of the act? This is dependent principally upon what occurred at the execution of the bond, and to understand it properly we must eviscerate the testimony of McDivitt. He says: "The bonds were given to protect us against loss, in the event of his becoming insolvent and not being able to get through with his difficulties." When further interrogated, Mr. McDivitt says: "Mr. Lonergan may have expressed fears that he would have to do it (take the benefit of the bankrupt law), as he was a good deal frightened about the condition of his business then." All this took place at Cincinnati, where the witness was called by a letter from Lonergan to Fenlon, and in the contents of which both were equally interested.

Now, what is the construction adopted by the supreme court of the United States as to the expression in the act, "Contemplation of bankruptcy." They say, in [Buckingham v. McLean] 13 How. [54 U. S.] 168, that the word "bankruptcy" occurs many times in the act. It is entitled "An act to establish a uniform system of bankruptcy." And the word is manifestly used in other parts of the law to describe the legal status to be ascertained and declared by a judicial decree. It cannot be easily admitted that this very precise and definite term is used in this clause, to signify something quite different. It is certainly true, in point of fact, that even a merchant may contemplate insolvency, and the breaking up of his business, and yet not contemplate bankruptcy. He may confidently believe that his personal character, the state of his affairs, and the disposition of his creditors are such that, when they have examined into his condition, they will extend the times of payment of their debts, and enable him to resume his business. A person not a merchant or banker, and consequently not liable to be proceeded against and made a bankrupt, though insolvent, may have come to a determination that he will not petition. The contemplation of one of these states not being in fact the contemplation of the other, to say that both were included in a term which describes only one of them would be a departure from sound principles of interpretation. The object of the provisos was to protect bona fide dealings with the bankrupt more than two months before the filing of the petition by or against him, provided the other party was ignorant of such an intent on the part of the bankrupt as made the security invalid under the first enacting clause. And the language is: "Provided that the other party to any such dealings or transactions had no notice of a prior act of bankruptcy or of the intention of the bankrupt to take the benefit of this act."

These facts, of which a bona fide creditor must have notice, if taken more than two months before the filing of the petition, can hardly be supposed to be different from the facts which must exist to render the security void under the first clause; or, in other words, if it be enough for the debtor to contemplate a state of insolvency, it could hardly be required that the creditor should have notice of an act of bankruptcy or an intention to take the benefit of the act. It would seem that notice to the creditor of what is sufficient to avoid the security, must deprive him of its benefits, and consequently, if he must have notice of something more than insolvency, something more than insolvency is required to render the security invalid; and that we may safely take this description of the facts, which a creditor must have notice of to avoid the security, as descriptive also of what the bankrupt must contemplate to render it void.

At what time, then, had Lonergan contemplated an act of bankruptcy, or a decree adjudging him a bankrupt upon his own petition? He gave the bond on the 24th of March, 1842. He continued his business during part of the summer of that year. Not until July did he write to McDivitt to enter up the judgment, and in December following he filed his application for the benefit of the bankrupt law. During the nine months intervening between the execution of the bond and the filing of his petition, he may have been harassed, embarrassed, and

insolvent; but it does not follow that he contemplated an act of bankruptcy. What Cady relates as happening on St. Patrick's day, 1842, and the matters detailed by Thomas A. Lonergan, do not militate against this view of the case, although the latter witness was disingenuous enough to suppress his relationship to the parties, and the fact that he was but nine or ten years of age when the principal circumstances to which he testified occurred.

The testimony does not support the allegation of the bill, that the bond to Fenlon was given in contemplation of bankruptcy, and, if it did, it fails to show that Fenlon had notice of it. He is, therefore, clearly within the first and second provisos to the second section of the bankrupt law. Entertaining these views, it is unnecessary to reconcile the conflicting opinions as to the exclusive jurisdiction of the bankrupt court in a proceeding to ascertain the validity of this judgment. We hold that it cannot be assailed in a collateral action, and that this court is not the forum in which to test it. It remained undisturbed during more than seven years of the life of the bankrupt, and now, with the proofs before us, no chancellor would decree that a judicial sale, occurring under it sixteen years ago, should be set aside at the instance of the vendee of the assignee in bankruptcy.

Upon the whole case we are of opinion that the complainant is not entitled to the relief prayed for, and the bill is dismissed at the cost of complainant.